## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINDA TURNER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **CASE NO. CV 04-B-0020-S** |
| | } | |
| **ELLARD CONSTRUCTION** | } | |
| **COMPANY,** | } | |
| | } | |
| **Defendant.** | } | |

### <u>MEMORANDUM OPINION</u>[1]

Currently before the court is a Motion for Summary Judgment filed by defendant Ellard Construction Company ("Ellard"). (Doc. 15.)[2] Plaintiff Linda Turner, a former Ellard employee, alleges that she suffered sexual harassment and disparate pay in violation of Title VII of the Civil Rights Act of 1964, as amended. (Doc. 1 ¶¶ 9-14.) Additionally, plaintiff

---

[1]    At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court has made significant changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

[2]    Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

alleges that she suffered retaliation for her complaint of sexual harassment to Ellard management, (*Id.* ¶¶ 18-19), and that the harassment created a hostile work environment (*Id.* ¶¶ 20-23).  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court finds that defendant's motion is due to be granted.

## I.  FACTUAL SUMMARY

Plaintiff began her employment with Ellard on May 17, 2000, as a Laborer at the rate of $7.00 per hour.  (Doc. 17, Ex. 1.)  During her employment, she received a promotion to the position of grade checker and received regular raises.  (Doc. 17, Exs. 1-3.)  At the time of her resignation in February 2003, plaintiff was earning $10.00 per hour.  (Doc. 17, Ex. 6.)  Prior to her employment with defendant, plaintiff had no experience as a grade checker.  (Doc. 17, Ex. 4 at 30.)  A fellow Ellard employee, Dale McGriff, trained her to work as a Grade Checker.  (*Id.* at 45.)  McGriff had worked both as a grade checker and as a foreman, (Ex. 17, Ex. 5 at 6), and while working as a foreman he had the responsibility of ensuring that grade checking was performed properly on job sites (Doc. 17, Ex. 4 at 25-26; Doc. 17, Ex. 7 ¶ 22).

On January 6, 2003, plaintiff complained to Mary Jim Brannan, defendant's office manager, that another Ellard employee, Herman Cagle, was harassing her.  (Doc. 17, Ex. 7 ¶ 5.)  Plaintiff claimed that Cagle had been harassing her by: (1) kicking the back of her

chair; (2) engaging in sexually explicit conversations and generally "nasty" talk;[3] and (3) trying to embarrass her in front of male co-workers. (Doc. 17, Ex. 4 at 56-58.)

On January 7, 2003, Ellard initiated an investigation of plaintiff's complaint, during which Brannan interviewed several Ellard employees. (Doc. 17, Ex. 8 at 2.) Upon conclusion of the investigation, Brannan compiled her findings into a report. (*Id.*) Defendant's investigation revealed that both plaintiff and Cagle engaged in sexually-oriented conduct and made sexually-oriented comments. (*Id.* at 2-6.) Upon conclusion of the investigation, Cagle received an oral and written reprimand, (Doc. 17, Ex. 13), and Cagle apologized to plaintiff (Doc. 17, Ex. 4 at 62; Doc. 17, Ex. 7 ¶ 17). On February 4, 2003, plaintiff resigned from her employment with Ellard. (Doc. 17, Ex. 14.)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that

---

[3]     Plaintiff testified that "[a]nything I'd say, [Cagle] would reverse it and make it sound vulgar, talking nasty all the time to me." (Doc. 17, Ex. 4 at 56.) Plaintiff further testified that Cagle often stated that she could be found "under Daddy Fred's desk taking care of him," an apparent reference to Ellard supervisor Fred Layne. (*Id.* at 57.) Defendant concedes that Cagle made other comments of a sexual nature to plaintiff, such as references to sex toys and oral sex. (Doc. 4 ¶ 7; Doc. 1 ¶ 7.) Such statements form a primary grounds for plaintiff's allegations of harassment. (Doc. 20 at 7.)

there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the

drawing of inferences from the facts are left to the jury, and therefore the evidence of the

nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *See*

*id.* at 255.  Nevertheless, the nonmovant need not be given the benefit of every inference but

only of every *reasonable* inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540

n.12 (11th Cir. 1988).

## III.  DISCUSSION

### A.  Plaintiff's Sexual Harassment Claim

### 1.  The prima facie case

For a plaintiff to demonstrate a prima facie case of a Title VII hostile environment

sexual harassment claim, she must satisfy the following five requirements:

> 1) that she belongs to a protected group; (2) that she has been subjected
> to unwelcome sexual harassment; (3) that the harassment was based on
> her sex; (4) that the harassment was sufficiently severe or pervasive to
> alter the terms and conditions of employment and create a
> discriminatorily abusive working environment; and (5) that a basis for
> holding the employer liable exists.

*Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).  Plaintiff alleges that she suffered actionable sexual harassment by Cagle.  Defendant argues that, even when taking plaintiff's allegations as true, they are not "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment" as required for a prima facie showing of sexual harassment under Title VII. *Hulsey*, 367 F.3d at 1244.  The court agrees.

The United States Supreme Court has established the standard by which to gauge claims of hostile environment sexual harassment.  The Court has held that Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (internal citations omitted).  In applying this standard to the evidence, courts are to consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating, or a mere offensive utterance." *Harris*, 510 U.S. at 23.  Furthermore, in determining whether the alleged conduct would be sufficient to alter the terms and conditions of a plaintiff's employment, the more severe the conduct, the less pervasive it need be, and vice versa.  *See, e.g.*, *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998) ("The more outrageous the conduct, the less frequent must it occur to make a workplace hostile."); *King v. Bd. of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990) ("Although a single [harassing] act can be enough,

5

generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident." (internal citation omitted)).

Accordingly, courts have not hesitated to grant summary judgment in cases where the alleged harassment was neither severe nor pervasive. *See Gupta v. Fla. Bd. of* Regents, 212 F.3d 571 (11th Cir. 2000) (finding a plaintiff's allegations that her supervisor asked her to lunch many times, once told her she looked "very beautiful," and once placed his hand on her knee were not sufficiently severe or pervasive to be actionable); *Mendoza v. Borden, Inc.,* 195 F.3d 1238 (11th Cir. 1999) (holding that conduct did not rise to an actionable level when the alleged harassment consisted of supervisor "constantly" watching the plaintiff and following her in the workplace, looking her "up and down" on two or three occasions while making a sniffing sound, rubbing his hip against her hip while touching her shoulder as she walked by on one occasion, and once telling her he was getting "fired up" when she entered his office); *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (upholding summary judgment for employer despite claims that the alleged harasser placed his hand on the plaintiff's stomach and commented on it, restrained her movements, and forced his hand underneath the plaintiff's sweater and bra and fondled her breast); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (reversing a jury verdict for the plaintiff where the evidence reflected that her direct supervisor would call her "pretty girl," once grunted when she wore a leather skirt, said that her entering his office was what made the office hot, said that a request for attention over the public-address system meant "all pretty girls run around

6

naked," and made a motion suggesting masturbation after referring to having only a pillow for company in his hotel room); *Garcia v. ANR Freight System*, 942 F. Supp. 351 (N.D. Ohio 1996) (granting summary judgment for employer despite claims that manager conducting the plaintiff's orientation grabbed the back of plaintiff's head and guided it toward his lap; asked to spend the night in her hotel room, and brushed his hand against plaintiff's breast).

Plaintiff's allegations cannot meet the "severe and pervasive" standard when compared to the allegations in the above cases in which summary judgment was granted. It is clear that plaintiff does not allege that Cagle actually touched her, demanded sexual favors, restrained her movements, engaged in an extensive and prolonged period of sexual banter, or sought to forcefully coerce plaintiff into sexual activity. Plaintiff's first allegation, that Cagle kicked the back of her chair, is not sexual in nature. The details of the other two allegations are insufficient when compared to Eleventh Circuit sexual harassment case law. Accordingly, plaintiff cannot make a prima facie case, and as a result, defendant is entitled to summary judgment.

## 2.    The *Faragher/Ellerth* Affirmative Defense

Even assuming plaintiff were able to establish a prima facie case, defendant would nonetheless be entitled to summary judgment pursuant to the affirmative defense set forth in the companion cases of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

The traditional labels of "quid pro quo" and "hostile environment" are no longer applicable in determining whether an employer should be held liable for a supervisor's sexual

harassment of a subordinate.  *See Ellerth*, 524 U.S. at 751.  Instead, an employer's liability for supervisory harassment is determined by dividing such allegations into two broad groups: "(1) harassment which culminates in a 'tangible employment action,' such as discharge, demotion or undesirable reassignment, and (2) harassment in which no adverse 'tangible employment action' is taken but which is sufficient to constructively alter an employee's working conditions."  *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1280 (11th Cir. 2003) (quoting *Ellerth*, 524 U.S. at 761-63, 765; *Faragher*, 524 U.S. at 790, 807.)

The first step in completing this analysis is determining whether a plaintiff suffered a tangible employment action.  In order to demonstrate a tangible employment action, a plaintiff must show a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Ellerth*, 524 U.S. at 761.

In this case, there is no evidence that plaintiff suffered any action at the hands of Cagle or as the result of Cagle's actions.  Plaintiff has not alleged and cannot show that she was fired, denied promotional opportunities, was reassigned to a different job, or that her benefits were changed or reduced in any way.  As mentioned *supra*, plaintiff voluntarily resigned on February 4, 2003.  (Doc. 17, Ex. 14.)

Because plaintiff suffered no tangible employment action, defendant is allowed to proceed under the principles set forth in *Faragher* and *Ellerth* to assert an affirmative defense potentially absolving it of liability for Cagle's actions.  As stated in *Faragher*, "[t]he defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent

8

and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  524 U.S. at 807.

The evidence shows that Ellard exercised reasonable care to prevent and correct promptly any sexually harassing behavior.  Prior to plaintiff's allegation of harassment, Ellard had implemented and distributed its sexual harassment policy, which broadly prohibits sexual harassment. (Doc. 17, Ex. 16.)  Plaintiff acknowledged that she read and understood the sexual harassment policy when she joined Ellard.   (Doc. 17, Ex. 4 at 31-32.) Additionally, plaintiff had complained on several occasions to Brannan about a variety of matters, and therefore understood defendant's complaint procedures.  (*Id.* at 35-37, 41-42.) As a result of plaintiff's complaint to Brannan about Cagle, defendant undertook an investigation.  Based upon the results of the investigation, Brannan determined that Cagle's conduct was inappropriate and gave him a reprimand. (Doc. 17, Ex. 13.)  Furthermore, Mr. Cagle apologized to plaintiff.  (Doc. 17, Ex. 4 at 62; Doc. 17, Ex. 7 ¶ 17.)  Plaintiff has presented no evidence that Cagle ever acted improperly after she complained to Brannan about him.  Accordingly, defendant satisfies the first element of the defense because it took prompt and effective action in response to plaintiff's complaint.

As to the second element, any harm suffered by plaintiff was caused primarily by her failure to report Cagle's actions earlier.   If plaintiff had reported Cagle's behavior immediately, Ellard could have investigated and remedied the situation at an earlier stage. Any harm plaintiff experienced would have been limited to the discomfort she felt when

Cagle made the first inappropriate comment.  Plaintiff did not need to wait as she did before reporting Cagle's actions, and as a result, she unreasonably failed to avail herself of Ellard's ability to investigate and remedy the situation.  Therefore, defendant satisfies the second element of the affirmative defense, and so it cannot be held liable for Cagle's behavior.  This court concludes that even if plaintiff could satisfy a prima facie showing of sexual harassment under Title VII, defendant would nonetheless be entitled to judgment as a matter of law pursuant to the *Faragher/Ellerth* affirmative defense.

**B.     Plaintiff's Disparate Pay Claim**

Plaintiff alleged in her complaint that she was paid "less than a similarly situated male grade checker, Dale McGriff," in violation of Title VII.  (Doc. 1, ¶ 10.)  To make a prima facie showing of disparate pay under Title VII, a plaintiff must demonstrate that the job she occupied was similar to higher paying jobs occupied by males.  *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992).  As both plaintiff and McGriff performed duties of grade checking for Ellard, plaintiff arguably satisfies the required *prima facie* showing of disparate pay.[4]

Once a plaintiff has satisfied a prima facie showing of disparate pay under Title VII, the burden of production in rebutting the prima facie case shifts to the defendant.  *Texas Dep't Of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas*

---

[4]  As set forth in *Miranda*, Title VII incorporates a more relaxed standard of similarity between male and female occupied jobs than the exacting standard of substantial equality as set forth in the Equal Pay Act.  *See Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998)

*Corp. v. Green,* 411 U.S. 792, 802 (1973).  In response to plaintiff's prima facie showing of disparate pay, defendant presented evidence showing that McGriff had more experience than plaintiff as a grade checker, and that McGriff had experience as a foreman, a position responsible for all aspects of Ellard's work on a job site, including ensuring that grade checking functions are properly performed.  (Doc. 17, Ex. 7 ¶ 22.)  Defendant also showed that McGriff was rehired after a gap in his Ellard employment at his previous rate of pay and then later placed into a foreman position.  (*Id.* ¶ 23.)  As a result, defendant satisfied its burden of production in rebutting plaintiff's prima facie showing.

Under the *McDonnell Douglas/Burdine* scheme, once a defendant has satisfied its burden of producing a legitimate, nondiscriminatory reason for the disparate treatment, the burden then shifts back to the plaintiff to demonstrate that the defendant's reasons are pretexts for discrimination.  The court finds that plaintiff has come forth with no evidence which would tend to show that defendant's reasons for the pay disparity are mere pretexts for discriminatory animus.  Plaintiff's efforts to overcome McGriff's superior qualifications by focusing on the fact that she was "certified" as a grade checker are insufficient.  The evidence submitted shows that McGriff possessed more experience than plaintiff, and that plaintiff was paid more than several male grade checkers during her employment. (Doc. 17, Ex. 6.)  This court therefore concludes that defendant is entitled to summary judgment on this claim.

C.      **Plaintiff's Retaliation Claim**

Plaintiff alleges that she suffered actionable retaliation because she was forced to continue to work with Cagle after she had reported Cagle's conduct. (Doc. 1, ¶¶ 15-19.) To satisfy a prima facie case for Title VII retaliation, a plaintiff must show that: (1) she engaged in statutorily protected conduct or expression; (2) she suffered adverse action subsequent to such activity; and (3) there was a causal link between the protected conduct or expression and the adverse action. *See Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 701 (11th Cir. 1998). Defendants argue that this claim should now be dismissed because plaintiff did not suffer any adverse action. (Doc. 16 at 17.) Plaintiff does not address this argument, or indeed her retaliation claim at all, in her opposition to the summary judgment motion. By not addressing this claim at that time, plaintiff abandons it. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting rule that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *see also Keel v. United States Dep't of Air Force*, 256 F. Supp. 2d 1269, 1279 n.27 (M.D. Ala. 2003) (stating that claims raised initially but not further argued will not be addressed; instead the court "will limit its discussion instead to the claims actually urged by Plaintiff's counsel in opposition to Defendants' dispositive motion"). Therefore, plaintiff's claim against defendant for retaliation is due to be dismissed.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the <u>30th</u> day of June, 2005.


_Sharon Lovelace Blackburn_

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE